# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| PHILIP SUTTERLIN, Individually and For Others Similarly Situated<br><br>v.<br><br>PARNELL CONSULTANTS, INC. | Case No. 1:25-cv-00145<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Pursuant to 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Philip Sutterlin (Sutterlin) brings this collective action lawsuit to recover unpaid wages and other damages from Parnell Consultants, Inc. (Parnell).

2. Parnell employed Sutterlin as one of its Inspectors (defined below).

3. Sutterlin's and the other Inspectors' primary duties include inspecting interstate natural gas pipelines to ensure the safe transportation of gas in interstate commerce.

4. Sutterlin and the other Inspectors regularly work more than 40 hours a week.

5. But Parnell does not pay Sutterlin and its other Inspectors overtime for all hours worked in excess of 40 a week.

6. Instead, until at least January 2024, Parnell paid Sutterlin and its other Inspectors a fixed daily sum for each day worked, regardless of the total number of hours they work in a workweek (Parnell's "day rate pay scheme").

7. Parnell paid all its Inspectors according to this day rate pay scheme regardless of any allegedly individualized factors.

8. Indeed, Parnell uniformly misclassified Sutterlin and the other Inspectors as exempt from overtime.

1

9. But Parnell never paid Sutterlin and the other Inspectors on a "salary basis" as required for any relevant overtime exemption.

10. Parnell's uniform day rate pay scheme violates the Fair Labor Standards Act ("FLSA") by depriving Sutterlin and the other Inspectors of overtime pay when they work more than 40 hours in a week.

11. Additionally, Parnell pays Sutterlin and the other Inspectors "per diems" and "equipment reimbursements" that it does not include in the Inspectors' regular rates of pay for overtime purposes (Parnell's "per diem pay scheme").

12. Parnell's per diem pay scheme violates the FLSA by failing to compensate Sutterlin and the other Inspectors at a rate of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 each workweek.

## JURISDICTION & VENUE

13. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14. This Court has personal jurisdiction over Parnell based on Parnell's substantial contacts with Texas, including being registered to do business in Texas and employing Sutterlin and other Inspector's in Texas.

15. Venue is proper because Parnell a substantial part of the events or omissions giving rise to the claim occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

16. Specifically, Parnell employed Sutterlin and other Inspectors in and around Austin, Texas pursuant to its day rate pay scheme and per diem pay scheme.

## PARTIES

17. Parnell employed Sutterlin from approximately July 2016 until September 2024 as a Natural Gas Pipeline Inspector.

18. Until January 2024, Parnell paid Sutterlin according to its day rate pay scheme.

19. Throughout his employment, Parnell paid Sutterlin according to its per diem pay scheme.

20. Sutterlin's written consent is attached as **Exhibit 1**.

21. Sutterlin brings this collective action on behalf of himself and all other similarly situated inspectors who Parnell paid according to its illegal day rate pay scheme.

22. The putative collective of similarly situated employees is defined as:

> **All natural gas pipeline inspectors and similar job positions who Parnell paid according to its day rate pay scheme and/or a "per diem" at any time during the past 3 years (the "Inspectors").**

23. Parnell is an Arkansas corporation headquartered in Booneville, Arkansas.

24. Parnell can be served through its registered agent: **Jeff J. Smith, 1308 Columbus Dr., Wylie, Texas 75098**, or wherever he may be found.

## FLSA COVERAGE

25. At all relevant times, Parnell was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

26. At all relevant times, Parnell was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

27. At all relevant times, Parnell was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, tools, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

28. At all relevant times, Parnell has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

29. At all relevant times, the Inspectors were Parnell's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

30. At all relevant times, the Inspectors were engaged in commerce or in the production of goods for commerce.

**FACTS**

31. Parnell "specializes in all aspects of oil & natural gas pipeline construction and inspection" and "provide[s] construction, inspection and land solutions in support of energy development, nationwide."[1]

32. To meet its business objectives, Parnell hires inspectors, like Sutterlin and the other Inspectors, who it "staffs" to work on oil and gas pipelines for Parnell's clients.

33. Parnell's clients are companies that own and/or operate pipelines.

34. Parnell's clients' entire industry is related to the production and transportation of oil and gas goods.

35. Parnell's clients build, repair, and/or maintain pipelines that enable the movement of goods, including natural gas, across state lines as a stream of interstate commerce.

36. Indeed, "[t]he U.S. natural gas pipeline network is a highly integrated network that moves natural gas throughout the continental United States. The pipeline network has about 3 million miles of mainline and other pipelines that link natural gas production areas and storage facilities with consumers."[2]

---

[1] https://www.parnellconsultants.com/ (last visited January 29, 2025).
[2] https://www.eia.gov/energyexplained/natural-gas/natural-gas-pipelines.php (last visited January 29, 2025).

4

37. Through Sutterlin's and the other Inspectors' job duties of inspecting elements of the pipeline infrastructure, Sutterlin and the other Inspectors are responsible for the safe transportation of oil and gas.

38. The United States Department of Transportation ("DOT") regulates pipeline and safety maintenance, including through the Pipeline and Hazardous Materials Safety Administration.

39. The Pipeline and Hazardous Materials Safety Administration sets federal standards that pipelines must comply with in their operation.

40. Sutterlin's and the other Inspectors' primary duties include ensuring pipelines are constructed, maintained, and/or repaired in accordance with established standards, procedures, plans, and regulations.

41. Sutterlin and the other Inspectors assist Parnell's oil and gas clients in meeting all operation requirements set forth by the Pipeline and Hazardous Materials Safety Administration on a federal level and by related state agencies.

42. If Sutterlin and the other Inspectors do not perform their jobs correctly, the pipelines could fail, causing serious health, environmental, and financial harm.

43. The inspection services Sutterlin and the other Inspectors provide to Parnell and its clients are necessary to keep the intra- and interstate flow of oil and gas.

44. Sutterlin's and the other Inspectors' work is centered on ensuring the safe transport of oil and gas to its ultimate destination.

45. Without the work of pipeline inspectors like Sutterlin and the other Inspectors, Parnell's clients' oil and gas pipelines could not transport oil and gas interstate.

46. At all relevant times, Sutterlin and the other Inspectors have been actively and directly engaged in the transportation of oil and gas across state lines.

47. Sutterlin and the other Inspectors work on pipelines that cross state lines.

48. Thus, Sutterlin and the other Inspectors perform work directly affecting the channels of commerce.

49. And Sutterlin and the other Inspectors are employed directly in the channels of commerce.

50. Sutterlin and the other Inspectors regularly work more than 40 hours a week.

51. But Parnell does not pay Sutterlin and its other Inspectors 1.5 times their regular rates of pay—based on all remuneration—when they work more than 40 hours a week.

52. Instead, Parnell uniformly pays Sutterlin and its other Inspectors according to its day rate pay scheme and per diem pay scheme.

53. While exact job titles and location may differ, Sutterlin and the other Inspectors are subjected to the same or similar pay practices, Parnell's day rate pay scheme and per diem pay scheme, for similar work.

54. For example, as a Natural Gas Pipeline Inspector, Sutterlin's primary duties included inspecting natural gas pipelines for Parnell's clients to overseeing compliance with all safety, construction, and maintenance standards required by state and federal regulation, as well as Parnell's clients, to ensure the safe transportation of oil and gas in interstate commerce.

55. Sutterlin typically worked approximately 10 to 11 hours a day for 5 to 6 days a week (50 to 66 hours a workweek).

56. Parnell (and its clients) set Sutterlin's schedule and Sutterlin worked as directed by Parnell (and its clients).

57. Despite knowing Sutterlin regularly works more than 40 hours a workweek, Parnell does not pay him 1.5 times his regular rate of pay for the hours he works in excess of 40 a workweek.

58. Instead, until January 2024, Parnell paid Sutterlin according to its day rate pay scheme.

6

59. That is, Parnell paid Sutterlin a fixed daily sum of approximately $190 a workday, regardless of the actual number of hours he worked in a workday or workweek.

60. Parnell did not pay Sutterlin overtime wages under its day rate pay scheme.

61. For example, during the pay period ending December 31, 2023, Sutterlin worked 8 days, and Parnell paid him $190 a day, with no overtime:

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Daily Rate | 8:00 | 190.00 | 1,520.00 | 1,520.00 |

62. During the pay period ending December 31, 2022, Sutterlin worked 11 days, Parnell paid him $190 a day, but also asserted to pay him 2 hours of "overtime" (the only time this occurred prior to January 2024), which even if it accurately represented overtime wages, substantially underpaid the overtime Sutterlin was owed:

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Daily Rate | 11:00 | 190.00 | 2,090.00 | 2,090.00 |
| overtime pay | 2:00 | 28.50 | 57.00 | 57.00 |
|  | 13:00 |  | 2,147.00 | 2,147.00 |

63. Despite knowing Sutterlin regularly worked over 40 hours a workweek, Parnell did not pay him overtime wages under its day rate pay scheme for those hours.

64. Additionally, Parnell paid Sutterlin under its per diem pay scheme throughout his employment.

65. Specifically, Parnell paid Sutterlin a "per diem" of approximately $200 a workday and an "equipment reimbursement" of $1,55 a pay period.

66. For example, during the pay period ending March 24, 2024 pay period, Parnell paid Sutterlin $2,200 labeled as "per diem" and $1,705 labeled as "equipment":

7

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Hourly Rate | 80:00 | 17.27 | 1,381.60 | 8,289.60 |
| Overtime (x1.5) hourly | 27:30 | 25.91 | 712.53 | 3,692.18 |
| Daily Rate | | | | 1,520.00 |
| | 107:30 | | 2,094.13 | 13,501.78 |
| **Taxes** | | | **Current** | **YTD Amount** |
| Medicare Employee Addl Tax | | | 0.00 | 0.00 |
| Federal Withholding | | | -222.00 | -1,419.00 |
| Social Security Employee | | | -129.84 | -837.11 |
| Medicare Employee | | | -30.37 | -195.78 |
| | | | -382.21 | -2,451.89 |
| **Adjustments to Net Pay** | | | **Current** | **YTD Amount** |
| Per Diem | | | 2,200.00 | 14,040.00 |
| Equipment | | | 1,705.00 | 11,085.00 |
| direct deposit fee | | | -7.00 | -49.00 |
| | | | 3,898.00 | 25,076.00 |

67. And during the pay period ending March 10, 2024 Parnell paid Sutterlin $2,000 labeled as "per diem" and $1,550 labeled as "equipment"

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Hourly Rate | 80:00 | 17.27 | 1,381.60 | 6,908.00 |
| Overtime (x1.5) hourly | 20:00 | 25.91 | 518.20 | 2,979.65 |
| Daily Rate | | | | 1,520.00 |
| | 100:00 | | 1,899.80 | 11,407.65 |
| **Taxes** | | | **Current** | **YTD Amount** |
| Medicare Employee Addl Tax | | | 0.00 | 0.00 |
| Federal Withholding | | | -198.00 | -1,197.00 |
| Social Security Employee | | | -117.78 | -707.27 |
| Medicare Employee | | | -27.55 | -165.41 |
| | | | -343.33 | -2,069.68 |
| **Adjustments to Net Pay** | | | **Current** | **YTD Amount** |
| Per Diem | | | 2,000.00 | 11,840.00 |
| Equipment | | | 1,550.00 | 9,380.00 |
| direct deposit fee | | | -7.00 | -42.00 |
| | | | 3,543.00 | 21,178.00 |

68. Thus, Parnell paid the per diem and equipment reimbursement based on the number of days and/or hours Sutterlin worked.

69. Moreover, Sutterlin was not working away from home over night, but rather, went home each day after work.

70. And Sutterlin was not required to purchase equipment to complete his job.

71. Parnell and/or its clients provided necessary equipment, such as cell phones and computers.

8

72. Despite knowing it was required to include this "per diem" and "equipment" compensation in Sutterlin's regular rate of pay for the purpose of calculating overtime, Parnell never did so.

73. Thus, Parnell failed to pay Sutterlin at a rate of at least 1.5 times his regular rate of pay—based on all remuneration—for all hours he worked in excess of 40 each workweek.

74. Parnell paid all its Inspectors according to the same day rate pay scheme (until at least January 2024) and per diem pay scheme it imposed on Sutterlin.

75. That is, Parnell paid all its Inspectors a fixed daily rate for each day they worked and failed to pay them overtime when they worked more than 40 hours a workweek.

76. Like Sutterlin, the other Inspectors typically work 10 to 11 hours a day for 5 to 6 days a week (50 to 66 hours a workweek).

77. And like Sutterlin, the other Inspectors work in accordance with the schedule set by Parnell (and its clients).

78. Despite knowing its Inspectors regularly work overtime, Parnell does not pay them 1.5 times their regular rates of pay when they work more than 40 hours in a workweek.

79. Despite misclassifying Sutterlin and the other Inspectors as exempt, Parnell never paid them on a "salary basis."

80. Parnell does not pay Sutterlin and its other Inspectors a guaranteed sum on a weekly or less frequent basis that is not subject to reduction based on the quality or quantity of work.

81. Thus, Parnell never paid Sutterlin and its other Inspectors on a "salary basis." *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 143 S. Ct. 677, 685 (2023) ("Daily-rate workers, of whatever income level, are paid on a salary basis only through the test set out in § 604(b)"); *see also* 29 C.F.R. § 541.604.

9

82. Because Parnell uniformly fails to pay Sutterlin and the other Inspectors on a "salary basis," they are all non-exempt employees entitled to overtime.

83. And Parnell likewise pays the other Inspectors under its per diem pay scheme.

84. Specifically, like Sutterlin, Parnell pays the other Inspectors compensation it labels as per diems and expense reimbursements.

85. But like Sutterlin, this compensation fluctuates based on the number of hours and days the other Inspectors work.

86. And like Sutterlin, the other Inspectors are provided with the equipment necessary to perform their jobs and do not incur expenses because they are working away from their homes.

87. And like Sutterlin, Parnell fails to include this compensation in the other Inspectors' regular rates of pay for the purpose of calculating their overtime rates of pay.

88. Thus, like Sutterlin, Parnell fails to pay Sutterlin at a rate of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 each workweek.

89. Parnell does not pay Sutterlin and its other Inspectors overtime at the required rates when they work more than 40 hours a workweek, in willful violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

90. Like Sutterlin, the other Inspectors are victimized by Parnell's day rate pay scheme and per diem pay scheme.

91. Other Inspectors worked with Sutterlin and indicated they were paid in the same manner, performed similar work, and were subject to Parnell's same day rate pay scheme and per diem pay scheme.

92. Based on his experience with Parnell, Sutterlin is aware Parnell's day rate pay scheme and per diem pay scheme were imposed on other Inspectors.

93. The Inspectors are similarly situated in the most relevant respects.

94. Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime pay.

95. Any relevant exemption defenses would require Parnell to pay the Inspectors on a "salary basis."

96. Because Parnell's illegal day rate pay scheme fails the "salary basis" test, the specific job duties performed by the Inspectors are largely irrelevant.

97. The relevant inquiries are whether the Inspectors were paid according to Parnell's day rate pay scheme and whether that pay scheme satisfied the "salary basis" test.

98. Therefore, the specific job titles or precise job locations of the various Inspectors do not prevent collective treatment.

99. Rather, Parnell's day rate pay scheme and per diem pay scheme render Sutterlin and the other Inspectors similarly situated for the purpose of determining their right to overtime pay.

100. Parnell's records reflect the number of days and/or hours the Inspectors worked each workweek.

101. Parnell's records also show how and what it paid the Inspectors for the time they worked.

102. The back wages owed to Sutterlin and the other Inspectors can therefore be calculated using the same formula applied to the same records.

103. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Parnell's records, and there is no detraction from the common nucleus of liability facts.

104. Therefore, the issue of damages does not preclude collective treatment.

105. Sutterlin's experiences are therefore typical of the experiences of the other Inspectors.

106. Sutterlin has no interest contrary to, or in conflict with, the other Inspectors that would prevent collective treatment.

107. Like each Inspector, Sutterlin has an interest in obtaining the unpaid wages owed under federal law.

108. Sutterlin and his counsel will fairly and adequately protect the interests of the Inspectors.

109. Sutterlin retained counsel with significant experience in handling complex collective action litigation.

110. A collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

111. Absent this collective action, many Inspectors will not obtain redress for their injuries, and Parnell will reap the unjust benefits of violating the FLSA.

112. Further, even if some of the Inspectors could afford individual litigation, it would be unduly burdensome to the judicial system.

113. Indeed, the multiplicity of actions would create a hardship for the Inspectors, the Court, and Parnell.

114. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Inspectors' claims.

115. Sutterlin knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

116. Parnell's day rate pay scheme and per diem pay scheme deprived Sutterlin and the other Inspectors of the overtime wages they are owed under federal law.

117. There are many similarly situated Inspectors who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

118. The Inspectors are known to Parnell, are readily identifiable, and can be located through Parnell's business and personnel records.

### PARNELL'S VIOLATIONS WERE WILLFUL

119. Parnell knew it was subject to the FLSA's overtime provisions.

120. Parnell knew the FLSA required it to pay non-exempt employees, including the Inspectors, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 a workweek.

121. Parnell knew each Inspector worked more than 40 hours in at least one workweek during the relevant period.

122. Parnell knew it paid its Inspectors under its day rate pay scheme and/or per diem pay scheme.

123. Parnell knew it did not pay its Inspectors on a "salary basis."

124. Parnell knew it did not pay its Inspectors any guaranteed "salary" that was not subject to reduction based on the quantity or quality of work.

125. Thus, Parnell knew its day rate pay scheme did not satisfy the "salary basis" test.

126. Parnell knew it needed to pass the "salary basis" test to qualify for the exemptions it might have claimed with respect to the Inspectors.

127. And Parnell knew it was required to, but did not, include the "per diems" and "equipment reimbursements" in the Inspectors' regular rates of pay for the purpose of calculating overtime.

128. Parnell knew, or showed reckless disregard for whether, its conduct described in this Complaint violated the FLSA.

129. Indeed, Parnell has been previously sued for not paying its employees required overtime wages, in violation of the FLSA, under the same or similar day rate pay scheme and per diem pay scheme. *See*, *Kee, Jr. v. Parnell Consultants, Inc.*, 1:22-cv-00048 (W.D. Tex.).

130. Parnell knowingly, willfully, and/or in reckless disregard carried out this illegal day rate pay scheme and per diem pay scheme that systematically deprived the Inspectors of overtime pay in violation of the FLSA.

## CAUSE OF ACTION
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

131. Sutterlin brings his FLSA claims as a collective action on behalf of himself and the other Inspectors.

132. Parnell violated, and is violating, the FLSA by employing non-exempt employees, Sutterlin and the other Inspectors, in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

133. Parnell's unlawful conduct harmed Sutterlin and the other Inspectors by depriving them of the overtime wages they are owed.

134. Accordingly, Parnell owes Sutterlin and the other Inspectors the difference between the overtime actually paid and the required overtime.

135. Because Parnell knew, or showed reckless disregard for whether, its day rate pay scheme and per diem pay scheme violated the FLSA, Parnell owes Sutterlin and the other Inspectors these wages for at least the past 3 years.

136. Parnell is also liable to Sutterlin and the other Inspectors for an amount equal to all their unpaid overtime wages as liquidated damages.

137. Finally, Sutterlin and the other Inspectors are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

### JURY DEMAND

138. Sutterlin demands a trial by jury.

### RELIEF SOUGHT

WHEREFORE, Sutterlin, individually and on behalf of the other Inspectors, seeks the following relief:

   a. An Order designating this lawsuit as a collective action and authorizing notice to the Inspectors allowing them to join this action by filing a written notice of consent;

   b. An Order finding Parnell liable to Sutterlin and the other Inspectors for unpaid wages owed under the FLSA, plus liquidated damages in amount equal to their unpaid wages;

   c. A Judgment against Parnell awarding Sutterlin and the other Inspectors all their unpaid wages, liquidated damages, and any other penalties available under the FLSA;

   d. An Order awarding attorneys' fees, costs, and expenses;

   e. Pre- and post-judgment interest at the highest applicable rates; and

   f. Such other and further relief as may be necessary and appropriate.

Dated: January 30, 2025.

Respectfully submitted,

**JOSEPHSON DUNLAP, LLP**

By: /s/ *Michael A. Josephson*
    Michael A. Josephson
    TX Bar No. 24014780
    Andrew W. Dunlap
    TX Bar No. 24078444
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: 713-352-1100
Fax: 713-352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch
TX Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: 713-877-8788
Fax: 713-877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR SUTTERLIN AND THE INSPECTORS**